## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALVIN MEAD**                                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 08-3173**

**BURL CAIN, WARDEN**                                             **SECTION "C"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background[2]

The petitioner, Alvin Mead ("Mead"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3] On February 26, 1998, Mead and a co-defendant, Natasha J. Jones, were charged by bill of information in Orleans Parish with possession of 28 grams or more, but less than

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The state court records used are three volumes produced in this case and two volumes and one supplemental volume from Civ. Action No. 03-3058"C"(4). *See* Rec. Doc. No. 17.

[3]Rec. Doc. No. 4.

200 grams of crack cocaine, or of a mixture containing a detectible amount of crack or cocaine or one of its analogues.[4]

The record reflects that, on the night of October 5, 1997, Officer Travis McCabe, Sergeant Steven Gaudet, and Officer Eric Hite were on uniformed patrol in a marked police unit in New Orleans, Louisiana.[5] The officers turned left from First Street onto Dryades Street and ended up behind a vehicle driven by Natasha Jones with Alvin Mead as the passenger. Jones began to drive recklessly and ran a stop sign.

Officer McCabe then activated the siren and lights to initiate a stop. Jones accelerated. Officer McCabe noticed that the passenger, Mead, threw a large white object out of the window. The object hit a parked car and fell into the street. At that time, Jones stopped her car at the curb.

When the officers exited their police unit, Officer McCabe recovered the object and determined it to be a white piece of paper wrapped around a plastic bag filled with a white powdery substance, later determined to be cocaine. Mead became irrational after the officers stopped him and had to be restrained. Officer McCabe then arrested Mead and Jones.

Mead and Jones were tried jointly before a jury on May 5, 1999.[6] Jones was acquitted and Mead was found guilty as charged.[7]

---

[4]St. Rec. Vol. 1 of 3, Bill of Information, 2/26/98.

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal. St. Rec. Vol. 1 of 3, 4th Cir. Opinion, 99-KA-2686, 9/27/00; *State v. Mead*, 771 So. 2d 329 (La. Ct. App. 2001) (table).

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 5/5/99; St. Rec. Vol. 1 of 2, Trial Transcript, 5/5/99.

[7]St. Rec. Vol. 1 of 3, Verdict of the Jury (Mead), 5/5/99; Verdict of the Jury (Jones), 5/5/99.

At the scheduled sentencing hearing held June 21, 1999, the State filed a multiple bill and the Trial Court adjudicated Mead to be a multiple offender.[8] After waiver of legal delays, the Trial Court sentenced Mead to life imprisonment without benefit of parole, probation or suspension of sentence.[9] The Trial Court also denied Mead's motion to reconsider the sentence.[10]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Mead's counsel raised two assignments of error:[11] (1) insufficient evidence to support a conviction for possession of cocaine because of conflicting testimony from the police officers; and (2) the life sentence under the habitual offender statute was unconstitutionally excessive. Mead, acting *pro se*, raised three additional assignments of error:[12] (1) the trial judge erred in granting the State's motion in limine to prevent the defense from referencing the mandatory minimum incarceration to which he was exposed; (2) the trial court erred in denying the defendant's motion for mistrial after a prejudicial remark by a prospective juror during voir dire; and (3) the trial court erred in denying the defendant's motion to recuse because of the trial judge's role in a charge conference during a prior drug prosecution against the defendant. On September 27, 2000, the Louisiana Fourth Circuit affirmed the conviction and sentencing after finding no merit to the grounds raised.[13]

Mead claims to have mailed a timely writ application to the Louisiana Supreme Court by mail on October 27, 2000, and that the application was erroneously returned to him by the Court's

---

[8]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 6/21/99; Multiple Bill, undated.

[9]*Id.*

[10]*Id.*; St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, undated.

[11]St. Rec. Vol. 1 of 3, 4th Cir. Opinion, 99-KA-2686, 9/27/00; Appeal Brief, 99-KA-2686, 11/15/99.

[12]*Id.*

[13]*Id.*; *Mead*, 771 So. 2d at 329.

Central Staff. This matter is addressed later in this Report. He resubmitted the application, which was filed by the Louisiana Supreme Court on January 25, 2001, raising the five claims addressed on appeal.[14] The Supreme Court denied the application without reasons on September 21, 2001.[15]

On March 22, 2002, Mead submitted a Memorandum in Support of Post-Conviction Relief Application to the Trial Court raising three grounds for relief:[16] (1) improper double enhancement in the habitual offender proceeding; (2) insufficient proof that the predicate offenses were constitutionally obtained; and (3) ineffective assistance of counsel for failure to inform petitioner of a possible plea agreement, failure to challenge the sufficiency of the prior pleas as predicates, and failure to challenge the predicate pleas used in prior habitual proceeding.

On March 27, 2002, the Trial Court denied the application on procedural grounds stating that the claims constituted errors in the multiple offender proceeding which were not cognizable on post-conviction review and citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So. 2d 1172 (La. 1996).[17]

---

[14]St. Rec. Vol. 2 of 2, Letter to Supreme Court, 1/3/01; Letter to Supreme Court, undated; La. S. Ct. Writ Application, 01-KH-0261, 1/25/01; St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2001-KH-261, 1/26/01.

[15]*State ex rel. Mead v. State*, 797 So. 2d 72 (La. 2001); St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2001-KH-0261, 9/21/01.

[16]St. Rec. Vol. 1 of 3, Memorandum in Support of Post-Conviction Relief Application, signed 3/22/02. The record copy does not bear a file stamp date. The signature date is presumed to be the earliest date upon which he could have presented the pleading to prison officials for mailing.

[17]St. Rec. Vol. 1 of 3, Judgment, 3/27/02. La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted. In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief. In *State ex rel. Brown v. State*, 870 So. 2d 976 (La. 2004), the Louisiana Supreme Court extended the *Melinie* holding to claims arising from multiple offender proceedings which should have been raised on direct appeal.

On April 23, 2002, Mead submitted a writ application to the Louisiana Fourth Circuit , which was filed in the Court on May 1, 2002, raising the same three grounds for relief.[18]  The Louisiana Fourth Circuit denied the application on June 17, 2002, finding no error in the trial court's ruling.[19]

Mead also submitted a writ application to the Louisiana Supreme Court on July 17, 2002, seeking review of the same three post-conviction claims and challenging the lower court's reliance on *State ex rel. Melinie*, to bar his ineffective assistance of counsel claims.[20]  The Court denied the application without reasons on August 29, 2003.[21]

Almost three years later, on June 21, 2006, Mead submitted a Motion for Reconsideration, Amendment, or Modification of Sentence seeking a reduction in his sentence to reflect a change in Louisiana law enacted on May 16, 2006.[22]  He resubmitted this same motion on August 15, 2006, as "Motion to Correct Illegal Sentence/Motion Requesting Retroactive Application of the Recently Enacted LA. R.S. 15:308."[23]  On October 30, 2006, the Trial Court refused to consider the motion for several reasons.  Construing the motion as a request for post-conviction relief, the Court held that the request was not timely under La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So. 2d 1189 (La. 1995).[24]  The Court further held that sentencing errors were not proper for post-conviction review, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, 665 So. 2d at 1172.

[18]St. Rec. Vol. 2 of 3, 4th Cir. Writ Application, 2002-K-0849, 5/1/02 (signed 4/23/02).

[19]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2002-K-0849, 6/17/02.

[20]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 02-KH-2063, 7/24/02 (signed and postmarked 7/17/02); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2002-KH-2063, 7/24/02 (postmarked 7/17/02).

[21]*State ex rel. Mead v. State*, 852 So. 2d 1009 (La. 2003).

[22]St. Rec. Vol. 1 of 3, Motion for Reconsideration, Amendment, or Modification of Sentence, dated 6/21/06.

[23]St. Rec. Vol. 1 of 3, Motion to Correct Illegal Sentence, dated 8/15/06.

[24]St. Rec. Vol. 1 of 3, Trial Court Judgment, 10/30/06.

As a motion to amend or modify the sentence, the Court determined that it was without authority

to consider the motion, citing *State v. Gedric*, 751 So.2d 239 (La. 1999). Construing the motion as

one to correct an illegal sentence, the request was without merit because the sentence imposed was

under the law as it existed at the time of the commission of the offense, citing *State v. Sugasti*, 820

So. 2d 518 (La. 2002). Furthermore, the Trial Court resolved that any available relief would have

to be pursued through the Louisiana Risk Review Panel and not the state courts. Mead did not seek

further review of this ruling.

On November 20, 2006, Mead submitted an application for post-conviction relief alleging

that he was actually innocent based on an affidavit from his co-defendant, Natasha Jones, in which

she attests that she informed the investigating officers and the district attorney that she owned the

cocaine and that she tossed the cocaine out of the window of the car.[25] The Trial Court denied the

application on December 20, 2006, as untimely pursuant to La. Code Crim. P. art. 930.8.[26] The

Court also noted that Jones was acquitted by the jury at trial and that the affidavit evidence was not

sufficient to meet the standards for review set forth by the Louisiana Supreme Court.

Mead filed a writ application with the Louisiana Fourth Circuit seeking review of this ruling,

and the Court denied the application without reasons on January 25, 2007.[27] On March 9, 2007,

---

[25]St. Rec. Vol. 1 of 3, Memorandum in Support of Post-Conviction Application, 11/20/06.

[26]St. Rec. Vol. 1 of 3, Trial Court Judgment, 12/20/06.

[27]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2007-K-0066, 1/25/07; 4th Cir. Writ Application, 2007-K-0066, 1/17/07 (signed 1/8/07).

Mead signed and submitted an untimely writ application to the Louisiana Supreme Court seeking review of that ruling.[28]  The Court denied the application without reasons on January 7, 2008.[29]

While these matters were pending, on December 18, 2006, Mead submitted a request for an out-of-time appeal to the Louisiana Fourth Circuit.[30]  On February 8, 2007, the Court denied the application because the request was untimely under La. Code Crim. P. art. 930.8.[31]  Mead did not seek further review of this ruling.

Mead also returned to the state trial court during the pendency of the foregoing matters with another motion seeking to correct his sentence.[32]  The Trial Court denied the motion on January 19, 2007, because the sentence was not illegal.[33]  On March 1, 2007, the Louisiana Fourth Circuit denied Mead's subsequent writ application finding that the motion to correct the sentence was repetitive and otherwise barred from post-conviction review, citing *State ex rel. Melinie*.[34]  The Louisiana Supreme Court, on December 14, 2007, also denied Mead's subsequent and untimely filed writ application as untimely under La. Code Crim. P. arts. 930.8 and *State ex rel. Glover*, as not

---

[28]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 07-KH-698, 4/5/07 (signed 3/9/07, postal meter 3/15/07); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2007-KH-698, 4/5/07 (postal meter 3/15/07).  La. S. Ct. Rule X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment.  Mead's writ application was signed on March 9, 2007, which is the earliest date he could have given it to prison officials for mailing to the court.

[29]*State ex rel. Mead v. State*, 973 So. 2d 738 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-0698, 1/7/08.

[30]St. Rec. Vol. 2 of 3, 4th Cir. Writ Application, 2007-K-0020, 1/8/07 (signed 12/18/06).

[31]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2007-K-0020, 2/8/06.

[32]St. Rec. Vol. 1 of 3, Motion to Correct Illegal Sentence (undated).  The copy in the record does not bear a file stamp date or a full signature date.  The signature line was prepared for the year 2007.  Mead, therefore, could not have submitted the motion earlier than January 1, 2007.

[33]St. Rec. Vol. 1 of 3, Trial Court Order, 1/19/07.

[34]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2007-K-0178, 3/1/07; 4th Cir. Writ Application, 2007-K-0178, 2/9/07.

cognizable under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, and as repetitive pursuant to La. Code Crim. P. art. 930.4(D).[35]

In the meantime, on May 30, 2007, Mead submitted another application for post-conviction relief to the state trial court raising two issues:[36] (1) juror misconduct where juror took notes; and (2) he was denied counsel of choice at trial. On June 6, 2007, the Trial Court refused to consider the application because it was untimely under La. Code Crim. P. art. 930.8 and *State ex rel. Glover*.[37]

On July 27, 2007, the Louisiana Fourth Circuit denied Mead's related writ application finding no error in the Trial Court's ruling.[38] He did not seek further review of this ruling.

While that matter was pending, Mead filed another motion to reconsider his sentence in the Trial Court.[39] On September 6, 2007, the Trial Court issued an order indicating that it would not consider the motion because it was repetitive.[40] The Louisiana Fourth Circuit denied the related writ application on October 29, 2007.[41] The Louisiana Supreme Court, on September 26, 2008, also denied without reasons the subsequent writ application to that Court.[42]

---

[35]*State ex rel. Mead v. State*, 970 So. 2d 527 (La. 2007); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-0706, 12/14/07; La. S. Ct. Writ Application, 07-KH-706, 4/5/07 (signed 3/14/07, postal meter 3/16/07); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2007-KH-706, 4/5/07 (postmarked 3/16/07).

[36]St. Rec. Vol. 1 of 3, Uniform Application for Post Conviction Relief, 6/7/07 (signed 5/30/07).

[37]St. Rec. Vol. 1 of 3, Trial Court Judgment, 6/6/07.

[38]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2007-K-0772, 7/27/07; 4th Cir. Writ Application, 2007-K-0772, 6/26/07.

[39]The record does not contain a file stamped copy of this motion.

[40]St. Rec. Vol. 2 of 3, Trial Court Judgment, 9/6/07.

[41]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2007-K-1262, 10/29/07; 4th Cir. Writ Application, 2007-K-1262, 10/1/07 (signed 9/21/07). The filing date was obtained by the Court from the records of the Louisiana Fourth Circuit Court of Appeal.

[42]*State ex rel. Mead v. State*, 992 So. 2d 977 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-2429, 9/26/08; La. S. Ct. Writ Application, 07-KH-2429, 12/14/07 (signed 11/26/07).

## II.    Federal Petition

On June 27, 2008, the clerk of this Court filed Mead's petition for federal habeas corpus relief in which he alleged his actual innocence. In support thereof, he attached a copy of an affidavit purportedly from his co-defendant, Natasha Jones, in which she allegedly confesses that she owned the cocaine and was the person who threw the cocaine out of the window of the car.[43] In its opposition response, the State argues that Mead's federal petition was not timely filed.[44] In the alternative, the State also contends that the claim, if considered, is without merit.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[45] applies to this petition, which is deemed filed in this court under the federal mailbox rule on April 23, 2008.[46] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[43]Rec. Doc. No. 2.

[44]Rec. Doc. No. 13.

[45]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[46]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Mead's federal habeas petition on June 27, 2008, when the filing fee was paid. Mead dated his signature on the petition on April 23, 2008. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State alleges that Mead's petition is not timely filed. A review of the records before the Court reflects that Mead's petition was not timely filed and should be dismissed for that reason. Alternatively, the Court also finds that the actual innocence claim is in procedural default and fails to present a cognizable federal claim for this Court to review.

## IV.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final or from the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.[47] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). In this case, considering either initiating point, Mead's federal petition was not timely filed.

### A.   No New Factual Predicate

Construing Mead's petition broadly, the Court is compelled to consider whether the information in Jones's affidavit constitutes a new factual predicate to trigger a later filing period

---

[47]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

under the AEDPA. Mead does not specifically argue for this consideration nor does he provided any indication of when he first discovered or could have discovered the information contained in Jones's affidavit.

To the extent the affidavit is offered as a new factual predicate for the limitations trigger under § 2244(d)(1)(D), the Court's objective inquiry is not when the affidavit was executed, but rather when the factual predicate of the actual innocence claim supported by the affidavit could have been discovered if Mead or his prior counsel acted with due diligence. *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006). Mead bears the burden of establishing that he exercised due diligence in searching for a factual predicate for his habeas claim. *Id*. at 908; *Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003). The petitioner's failure to present facts to establish the date of his knowledge or when it was discoverable with due diligence, prevents the petitioner from invoking the benefits of §2244(d)(1)(D). *Redmond*, 295 F. Supp.2d at 772; *Barnes v. Cain*, No. 05-6428, 2008 WL 4298462 at *3-4 (E.D. La. Sept. 16, 2008) (Feldman, J.) (Order adopting Report and Recommendation).

In the purported affidavit, Jones attests that she threw the cocaine out of the window of the car.[48] She also indicates in the affidavit that, while at the precinct after their arrests, she reported to detectives that the cocaine belonged to her and that Mead knew nothing about it. Out of fear of losing her son, she provided the detectives with information about a drug dealer. As a result, she states that the detectives told her that she would go to jail for the drugs, but they would testify that Mead threw the cocaine out of the window. Finally, she indicates that she advised the district attorney through her attorney that she threw the cocaine out of the window of the car.

---

[48]Rec. Doc. No. 4, pp. 11-12, Affidavit of Natasha Jones.

As noted above, Mead does not indicate when he became aware of or could have discovered the facts contained in the affidavit, such as Jones's conversation with detectives. He therefore has not met his burden that he is entitled to the benefits of a new factual predicate under § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Barnes*, 2008 WL 4298462, at *3-4. Failure to meet that burden prevents him from relying on the delayed trigger date under § 2244(d)(1)(D) and reverts the Court's consideration of timeliness back to the finality of his conviction.

Nevertheless, considering the record before the Court, Mead could not establish his entitlement to a delayed start date under § 2244(d)(1)(D) because the information in the affidavit does not constitute a new factual predicate. The Court's query is not when Mead learned about the factual predicate, but rather when the information could have been discovered by Mead or his counsel with due diligence. A review of the record and transcripts reflects that Mead and/or his counsel should have been aware of or able to discover with due diligence information at or before trial to support this claim.

First, Mead's defense has consistently been, since the moment of his arrest, that he was innocent. Mead had to have known prior to trial that, if he was not guilty, Jones had to be. *Gentras v. Cain*, No. 06-3819, 2006 WL 3921907, at *3 (E.D. La. Dec. 6, 2006) (Shushan, J.) (for purposes of § 2244(d)(1)(D), the petitioner certainly must have known all along that he did not rent the hotel room where he was arrested for drug trafficking and could have discovered before trial the identity of the person, his co-defendant, who did), *Report and Recommendation adopted by*, *Gentras v. Cain*, No. 06-3819, 2007 WL 148725 (E.D. La. Jan. 10. 2007) (Engelhardt, J.) Mead did not have to wait for an affidavit to argue this on review of his conviction. *Id*.

The record establishes that cocaine was recovered at the scene of Mead's arrest. Jones was the only other person arrested at the same time and on the same charge. If Mead was not guilty, then the only other viable option was that Jones was. Mead and his counsel should have known that her declaration of innocence at trial was false.[49] The transcript reflects that Mead's counsel apparently chose not to question her veracity on that issue. His questions to her were instead with regard to whether Mead threw anything out of the car.[50]

In spite of this, Mead's counsel pursued questions of the detectives in which he insisted that the most important information in the police report was the identity of "who" threw the cocaine out of the car window.[51] This included repeated questions about the fact that the police report indicated that the passenger threw the cocaine out with his <u>left</u> hand.[52] This was contrary to the hearing and trial testimony in which the same officer was adamant that the passenger threw the cocaine out of the window with his <u>right</u> hand.[53] Another officer testified twice at trial that the <u>driver</u> threw the cocaine out of the car.[54] It was only upon questioning by Mead's counsel that the officer corrected himself to represent that the passenger threw the cocaine, and he attributed that statement to error.[55] In spite of all of this, Mead's counsel never asked Jones about her own role that evening.

---

[49]The Court notes that Mead has not raised to any court a claim of ineffective assistance of counsel based on counsel's performance at trial. Any such claim would not be exhausted, and also would not stand as cause to overcome the procedural bars discussed later in this opinion. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

[50]St. Rec. Vol. 1 of 2, Trial Transcript, p. 101, 5/5/99.

[51]*Id*. at 51-52.

[52]*Id*. at 48-50.

[53]*Id*. at 48-50, 76.

[54]*Id*. at 79, 80.

[55]*Id*. at 83-84.

The transcript also contains other indications that should have placed Mead and his counsel on notice that, although she made no inculpatory statements at the scene, Jones provided information to the police after her arrest and outside of his presence.[56]  Officer McCabe testified as follows:[57]

> After she was arrested, she was transported to the Sixth District station by us, she was very cooperative, very polite.  She provided, as a matter of fact, she was interviewed by Sixth District detectives and she provided useful information relative to other investigations.  She was very cooperative with us.

This information was also in the police report which Mead's counsel used to question the same officer at trial.[58]

Jones confirmed at trial that she made no statements to police at the scene.[59]  On cross-examination, Jones and the prosecutor had the following exchange about the cocaine evidence:[60]

Q    When did you first see this? (Ms. Stassi holds up a piece of evidence.)
A    At Sixth District.
Q    You didn't see that out on the scene?
A    No.
Q    You ever told anybody differently, Natasha?
A    No.
Q    You haven't?
A    No.
Q    Ever told me differently through your attorney?
A    No.

After the questioning of Jones by all counsel was completed, the prosecutor advised the Court that she had no further questions "however, regarding this testimony I would request that we have a meeting in chambers."  The Court held a bench conference which was not transcribed.

---

[56]*Id.* at 60-61.

[57]*Id.* at 61; *see also* Officer Gaudet's testimony, *Id.* at 87.

[58]*See id.* at 48-50, 87.

[59]*Id.* at 95-96.

[60]*Id.* at 100-01.

Nevertheless, it appears that Mead's counsel was on notice through this testimony, and apparently the bench conference, that the district attorney had received information from Jones's counsel which conflicted with Jones's trial testimony. This appears to confirm Jones's representation in the affidavit which she executed six years later. This also appears to confirm that the information in the affidavit was either known or at least was discoverable at the time of trial. Mead has offered no explanation why he did not contact or could not have contacted Jones, the mother of his child, any sooner to obtain her affidavit. *Accord Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (obtaining affidavits from family members is within the scope of due diligence).

Mead's counsel did not ask any questions and the record contains no motions to probe into Jones's pretrial statements made to the detectives or into the nature of the "cooperation" she provided. Even a minimal effort on the part of Mead and/or his counsel to pursue the information before or at trial would have entitled Mead to learn what Jones told the police during those statements and to learn the nature of the conflict posed by the prosecutor's questions at trial.

Based on the record before the Court, the information regarding the alleged inculpatory statements made by Jones to police were discoverable at or before trial many years before Mead presented his actual innocence claim or the affidavit to the courts. Mead has consistently asserted his innocence, from the time of the stop through the instant federal habeas petition. His claim of actual innocence is not new. The time spent gathering evidence to support the claim of actual innocence is not relevant to the Court's timeliness determination. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) (knowledge of the factual predicate is distinct from the time permitted for gathering evidence, including affidavits, to support the claim).

Considering all of the foregoing, the Court finds that the affidavit does not constitute new evidence such to create a later trigger for the one-year AEDPA filing period and Mead has failed to meet his burden of proving otherwise. The Court will, therefore, consider timeliness under the only other relevant trigger, finality of the conviction.

**B.          Date of Finality of the Conviction**

As an initial matter, the Court must determine when Mead's conviction became final. As recognized by the State in its opposition memorandum, this issue arose in his prior habeas, where Mead argued that he made timely efforts to file a post-appeal writ application in the Louisiana Supreme Court and his efforts were thwarted by an error in the Court's central staff office.[61]

The record reflects that, on September 27, 2000, the Louisiana Fourth Circuit affirmed Mead's conviction and sentence. The record also shows that Mead did not seek rehearing from that Court. Under Louisiana law, an application seeking review of the judgment of the court of appeal shall be filed or mailed within 30 days of the issuance of the judgment. La. S.Ct. R. X§5(a). As this Court has already determined in his prior habeas action, there was no timely filing for review in the Louisiana Supreme Court. Because of this, Mead's conviction became final 30 days later, on October 27, 2000. *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

In addressing this issue in the prior case, the undersigned Magistrate Judge made the following findings based on Mead's state court record and his pleadings in Civ. Action No. 03-3058"C"(4), which are a part of the materials under review here:

---

[61]For a full reporting, please refer to Rec. Doc. No. 33, Civ. Action No. 03-3058"C"(4), Report and Recommendation issued September 4, 2009.

As noted in the prior Supplemental Report and Recommendation (Rec. Doc. No. 14), Mead has not presented any concrete proof to this Court that the document he mailed to the Louisiana Supreme Court on October 27, 2000, was in fact a writ application. The letter sent to Mead by the Louisiana Supreme Court Central Staff on December 20, 2000, indicates that they were responding to a "letter" from him. Mead contends that it was not a letter; rather it was a timely writ application following his appeal. In his prior pleadings before this Court, Mead conceded that he can not provide any better proof of what he mailed in that envelope because the Louisiana Supreme Court did not mark or file-stamp the returned documents.

The state court record contains two letters from Mead to the Louisiana Supreme Court, dated January 3, 2001, and July 29, 2001, in which he claims that he attempted to file his writ application in October 2001 and requests that his writ application be considered timely.[62] A similar third letter is in the record as an attachment to another pleading and is not dated.[63]

In answer to the Fifth Circuit's first question, as reported in 2006, the record contains nothing to firmly resolve that Mead actually mailed a writ application to the Louisiana Supreme Court on October 27, 2000. *See Derouselle v. Cain*, No. 05-1380, 2006 WL 1985446 (E.D. La. 2006) (Order adopting Report and Recommendation) (certified mail receipt was not proof of envelope's content). The only determination that can be made from the record is that Mead is persistent in his position that he mailed a timely application for post-conviction relief to the Louisiana Supreme Court on October 27, 2000.

Nevertheless, affording Mead every benefit of the doubt, and assuming he mailed a writ application to the Louisiana Supreme Court on October 27, 2000, and that it was erroneously returned to him by Central Staff, this would not change the fact that <u>nothing</u> was actually filed at that time. His documents were returned to him unfiled. The impact of this "erroneous" return by the Central Staff also will be further addressed in the equitable tolling discussion later in this opinion. Thus, Mead had no properly filed or pending pleading in or considered by the Louisiana Supreme Court at that time because the documents were <u>returned</u> to him. Having nothing filed, he did not successfully continue the direct line of review and his conviction became final.

As for the timeliness of the January 25, 2001, writ application to the Louisiana Supreme Court, *res ipsa loquitur*. Mead concedes that he did not mail or file or submit the writ application which was actually filed on January 25, 2001, until after December 20, 2000, when he learned that his October 27, 2000, mailing was rejected by Central Staff. This was without question more than thirty days after the Louisiana Fourth Circuit affirmed his conviction and sentence on September 27, 2000. On its face, it was not timely presented in accord with La. S. Ct. Rule X§5.

---

[62]St. Rec. Vol. 2 of 2, Letter to Supreme Court, 1/3/01; Letter to Supreme Court, 7/29/01.

[63]St. Rec. Vol. 2 of 2, Letter to Supreme Court, undated.

The Fifth Circuit has long-resolved that, because there are no exceptions to La. S. Ct. Rule X§5, when an application is untimely presented to the Louisiana Supreme Court, the application is not "properly filed."[64]  *Butler v. Cain*, 533 F.3d 314, 319 (5th Cir. 2008); *Williams*, 217 F.3d at 311.  Therefore, a state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review.  *Butler*, 533 F.3d at 317 (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).  This means that Mead's conviction became final on October 27, 2000, when he failed to successfully file or submit anything in the Louisiana Supreme Court.

This brings the discussion to the Fifth Circuit's second question, whether the Louisiana Supreme Court considered the January 25, 2001, writ application to be untimely.  The Louisiana Supreme Court denied Mead's 2001 writ application without reasons stating only "denied."  The Fifth Circuit has addressed the meaning of this oft used one-word denial by the Louisiana Supreme Court in connection with an untimely filed writ application.  *Butler*, 533 F.3d at 319 n.2.

In *Butler*, the Fifth Circuit recognized that the *Causey*[65] court, while conceding no exception to timeliness under La. S. Ct. Rule X§5, was concerned with whether the "untimely" writ application was addressed by the Louisiana Supreme Court on the merits or dismissed as untimely.  The Fifth Circuit noted in *Butler* that this query differed from the Court's earlier *Williams* opinion, *supra*, which stopped its tolling inquiry at the determination that the untimely writ was "improperly filed." *Id*.  The Fifth Circuit resolved the conflict in *Butler* by holding that the Louisiana Supreme Court's one-word denial of an untimely filed writ application was a dismissal of the writ application as untimely.  In so doing, the Fifth Circuit noted that "the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits."  *Butler*, 533 F.3d at 319.  The *Butler* court has answered the question.  The untimely filed writ was denied as untimely.

At this juncture, the Court is compelled to reconsider whether Mead is entitled to some equitable tolling for the lapse of time between October 27, 2000 and the filing of the January 25, 2001, writ application in the Louisiana Supreme Court.  While this will not change the finality of Mead's conviction, it could afford Mead interruption of the running of the AEDPA filing period.

The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  *Pace* [*v. DiGuglielmo*], 544 U.S. [408,] 418 [(2005)]; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir.

---

[64]La. S. Ct. Rule X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment.

[65]*Causey*, 450 F.3d at 604-05.

1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

For purposes of this discussion, the Court will assume that the October 27, 2000, letter to the Louisiana Supreme Court included a writ application seeking review of the appellate court's opinion. As noted above, Mead alleges that he attempted to timely file the writ application and was denied that opportunity as the result of an error made by the Central Staff in returning the documents due to their mistaken belief that his appeal was still pending. In other words, Mead alleges that the state court itself created the delay which caused his writ application to be untimely filed.

Specifically, Mead refers to the Central Staff's letter where it states that his papers were returned because his direct appeal was still pending.[66] Clearly, Mead's direct appeal was not pending when he mailed his letter to the Louisiana Supreme Court on October 27, 2000, nor was it pending on December 20, 2000, when the Central Staff's returned his documents to him. This was clear error on the part of the court's personnel.

In addition, the Central Staff waited almost two months to notify Mead that his documents were being rejected. Immediately upon receipt of this letter, however, Mead began efforts to resubmit the pleadings for filing in the Louisiana Supreme Court. In fact the record demonstrates that, other than this one period of time, Mead has diligently pursued both his state and federal rights with timely filings.

"A prisoner must do all that he reasonably can 'to ensure that documents are received by the clerk of court in a timely manner.'" *Schillereff v. Quarterman*, 304 F. App'x 310, 312 (5th Cir. 2008) (quoting *Thompson v. Rasberry*, 993 F.2d 513, 515 (5th Cir. 1993)). The record demonstrates that Mead met this burden. In spite of this, through no fault of his own, his documents were rejected on the false premise that his appeal was pending. This appears to constitute an unintentional interference by state court personnel with his ability to file his pleadings.

Under these circumstances, Mead is entitled to equitable tolling of the time period from October 27, 2000, to the filing of the January 25, 2001, writ application. *But see*, *Howland v. Quarterman*, 507 F.3d 840 (5th Cir. 2007) (equitable tolling not warranted where post-conviction application was timely given to prison authorities for mailing but never received by state court because state court did not mislead the prisoner in any way and state officials did not interfere with his right to file); and *Hayes v. Wilson*, 268 F. App'x 344 (5th Cir. 2008) (state court's misfiling of appellate and state post-conviction pleadings did not warrant equitable tolling where petitioner was not actively misled about his rights). This would also include the granting of tolling for the pendency of the January 25, 2001, writ application, which was untimely filed as a result of the interference with the filing of the original writ

---

[66]Civ. Action No. 03-3058"C"(4), Rec. Doc. No. 13, Exh. B.

application on October 27, 2000. This will provide Mead with tolling from October 27, 2000, when he attempted to mail the writ application to the Louisiana Supreme Court, through September 21, 2001, when the Louisiana Supreme Court denied the January 25, 2001, writ application.

With these findings, this Court concluded that Mead's 2003 federal petition was timely filed only after applying the equitable tolling. This also included the finding that Mead's other properly filed state court applications for post-conviction relief or other collateral review made on prior to October 6, 2003, when his first federal petition was filed, were timely filed using the appropriate mailbox rules.

This Court must now determine how much time passed from finality of his conviction to the filing of this federal petition to determine whether this petition is timely filed. As resolved above, Mead's conviction became final on October 27, 2000, at the expiration of the time allowed to file for timely review of his direct appeal. Under the plain language of § 2244, Mead had until October 27, 2001, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Mead's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259

(5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"), *overruled on other grounds by Carey v. Safold*, 536 U.S. 122 (2002). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The Court has already resolved that Mead is entitled to equitable tolling from October 27, 2000, finality of his conviction through September 21, 2001, when the Louisiana Supreme Court denied his post-appeal writ application. From that ruling, Mead allowed 181 days of the one-year

AEDPA filing period to run until March 22, 2002, when he signed and submitted his first application for post-conviction relief to the state trial court.[67]  That pleading is considered to have remained pending in the state courts through August 29, 2003, when the Louisiana Supreme Court denied the related writ application.[68]

The AEDPA filing began to run again on August 30, 2003, and did so for the remaining 184 days, until March 1, 2004, when it expired.  Mead had not properly filed state post-conviction or other collateral review pending during that time.  His next such filing was the Motion for Reconsideration, Amendment, or Modification of Sentence submitted to the state trial Court on June 21, 2006.[69]  However, a pleading filed after expiration of the AEDPA filing period does not provide any tolling benefit.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The record also shows that, during this time period, Mead filed his first federal petition for habeas corpus relief under the federal mailbox rule on October 6, 2003.[70]  However, the law is well-settled that a federal petition is not a state post-conviction application or other collateral review for purposes of tolling under § 2244.  *Duncan*, 533 U.S. at 181-82; *Grooms v. Johnson*, 208 F.3d 488, 489 (5th Cir. 1999).  Therefore, Mead is not entitled to tolling for the time his first federal petition has been pending.  *Duncan*, 533 U.S. at 182; *Grooms*, 208 F.3d at 489.  As further noted by the State, this conclusion would also have been true had Mead attempted to amend his prior habeas petition to include this "new claim."  *See Mayle v. Felix*, 545 U.S. 644 (2005) (An amended habeas

---

[67]St. Rec. Vol. 1 of 3, Memorandum in Support of Post-Conviction Relief Application, signed 3/22/02.  The record copy does not bear a file stamp date.  The signature date is presumed to be the earliest date upon which he could have presented the pleading to prison officials for mailing.

[68]*State ex rel. Mead*, 852 So. 2d at 1009.

[69]St. Rec. Vol. 1 of 3, Motion for Reconsideration, Amendment, or Modification of Sentence, dated 6/21/06.

[70]*See* Civ. Action No. 03-3058"C"(4), Rec. Doc. No. 32, p.8 n.32.

petition does not relate back or avoid AEDPA's one-year time limit when it asserts a new ground for relief different from those raised in the original pleading.) The new claim would still have been subject to a timeliness review in order to relate back to the filing date of the prior habeas.

Furthermore, the United States Fifth Circuit Court of Appeals has held that the AEDPA does not provide for an exception to its limitations period for claims of actual innocence, like that asserted by Mead. *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (citing *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000)). The limitations period is not tolled merely because the petitioner believes he is entitled to relief. *United States v. Alexander*, No. Crim. A 94-343, 2000 WL 1092618, at *3 (E.D. La. Aug. 2, 2000) (Barbier, J.); *Gaines v. Cockrell*, Nos. 3-02-CV-2003-G/3-02-CV-2373-G, 2003 WL 222444 (N.D. Tex. Jan. 28, 2003) (Order adopting Report and Recommendation) (citing *Melancon*, 259 F.3d at 408).

As referenced above, the post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. Mead has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to any period of time after that initial period between October 27, 2000, through September 21, 2001, as discussed thoroughly above.

For the foregoing reasons, Mead's federal habeas corpus petition, deemed filed on April 23, 2008, is untimely and should be dismissed as time barred.

## V.    Alternative Findings

Should a reviewing Court find a basis for considering Mead's petition to be timely filed, the Court also finds in the alternative for the following reasons that Mead's actual innocence claim is in procedural default and otherwise fails to present a cognizable federal claim.

### A.    Procedural Default

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420. This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). The record does not reflect any reason other than inadvertence and an incomplete recitation of the case's procedural history for the State's failure to raise this defense in its briefs. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360). Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360. The Court therefore will address the procedural bar of this claim *sua sponte*.

Mead first raised this actual innocence claim in his 2006 application for post-conviction relief. The Trial Court denied the claim finding the application to be barred from post-conviction review because it was untimely under La. Code Crim. P. art. 930.8. The claim was raised in Mead's

subsequent writ applications to the Louisiana Fourth Circuit and the Louisiana Supreme Court. Both courts denied relief without providing reasons. Therefore, the denial of relief by the higher courts is presumed to be based on the same reasons set forth by the Trial Court. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion). Mead's actual innocence claim was denied as untimely on state procedural grounds.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

In this case, the Louisiana courts barred review of Mead's actual innocence claim as untimely under La. Code Crim. P. art. 930.8. This Court must consider whether the bar prohibits

consideration of the claim on federal habeas corpus review. For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

### 1.    __Independent and Adequate__

For the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902.

The United States Fifth Circuit Court of Appeals in *Glover v. Cain* held that denial of relief premised on the untimeliness of a claim under La. Code Crim. P. art. 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine. *Glover*, 128 F.3d at 902. The same is true in this case. The state courts' rulings were clear and express in their reliance on Article 930.8 and *State ex rel. Glover* when denying Mead's writ application.

The United States Fifth Circuit has also squarely held that because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate" rule, *i.e.*, it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover*, 128 F.3d at 902 (citing *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); and *Amos*, 61 F.3d at 339). Because the state courts' decision rested on an independent and adequate state rule of procedural default, this court may not review Mead's federal habeas claim.

## 2. <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Mead has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Mead from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680,

681-82 (5th Cir. 1977)).  Mead's actual innocence claim is therefore procedurally barred from review by this federal habeas corpus court.

### 3. Fundamental Miscarriage of Justice

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.  To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

It is here that Mead could argue that he is entitled to federal review of his untimely habeas petition in light of the affidavit from Jones, if it is considered new evidence at all.  However, the Court has already resolved that the affidavit is not "newly discovered evidence."  It stands only as confirmation of evidence that could have been discovered at the time of trial.  Thus, Mead has not pointed to any new evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence.  *Murray*, 477 U.S. at 496.  Mead has failed to meet his burden of proving that a fundamental miscarriage of justice would occur if this Court does not consider the

merits of his actual innocence claim.  His claim, if not time barred, should be dismissed with prejudice as procedurally barred from federal review.

**B.**    **No Cognizable Federal Claim**

Furthermore, the affidavit from Jones which Mead relies on to show his actual innocence is actually the claim itself.  The affidavit is not presented as an excuse for the procedural default nor is it presented as the basis for the Court to consider an independent constitutional claim.  It is presented solely as support for his actual innocence claim.

However, absent an accompanying constitutional violation, a petitioner's claim of actual innocence is not cognizable on federal habeas.  *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("actual innocence is not an independently cognizable federal-habeas claim.").  The United States Supreme Court has made clear that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*,  506 U .S. 390, 400 (1993) (citing *Townsend v. Sain*, 372 U.S. 293, 317 (1963)).

Thus, even if Mead could overcome the procedural bar imposed by the state courts by showing a fundamental miscarriage of justice, the sole claim raised herein, actual innocence, is not cognizable on federal habeas review.  There would be no federal claim for this Court to review.  Mead's petition would still be dismissed with prejudice for failure to present a cognizable claim.

**VI.**    **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Alvin Mead's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH**

**PREJUDICE** as time-barred.  Alternatively, the petition could be dismissed with prejudice as procedurally barred and/or for failure to state a cognizable claim.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[71]

New Orleans, Louisiana, this 21st day of April, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[71]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.